FILED




8:24 am, 7/22/21

Margaret Botkins
Clerk of Court

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

KAYTLYN WILSON MARTINEZ, on behalf of herself and all others similarly situated,

Plaintiff,

vs.

ROCKY MOUNTAIN RECOVERY SYSTEMS, INC.,

Defendant.

Case No. 21-CV-101-F

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS IN PART

Defendant Rocky Mountain Recovery Systems, Inc. ("RMRSI") moves (ECF No. 8) to dismiss Plaintiff Kaytlyn Wilson Martinez's complaint for lack of subject matter jurisdiction due to her parallel counterclaim pending in state court. Plaintiff opposes. ECF No. 10. RMRSI did not file a reply. For the reasons that follow, the Court grants in part and denies in part the motion.

*I. Relevant Facts*

In this case, Ms. Martinez sues RMRSI for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Plaintiff alleges that "[t]he FDCPA prohibits debt collectors from engaging in abusive, deception and unfair collection practices while attempting to collect on debts." Complaint ¶ 1. "Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that

Defendant sought to collect from Martinez is a consumer debt." *Id.* ¶ 3. "RMRSI is a 'debt collector' as that term is defined by the FDCPA." *Id.* ¶ 6 (citing 15 U.S.C. § 1692(a)(6)).

> On or about August 14, 2014, Martinez underwent a medical procedure at West Park Hospital District, now known as Cody Regional Health. Upon admission into the hospital, Martinez executed a document acknowledging that some of the healthcare providers are not employees of the Hospital and may separately bill for the services rendered. Since Martinez did not have any insurance which covered the treatment she received, the Hospital billed Martinez directly.
>
> When Martinez did not pay the Hospital, the Hospital allegedly "assigned" its accounts involving Martinez to the Defendant. During the course of the collection process, RMRSI asserted that it was the "owner" and/or "assignor" of the debt.
>
> Upon information and belief, Plaintiff believes that RMRSI paid no valid consideration for the assignment of the debt. RMRSI further acknowledges that if a negotiated settlement is reached, it seeks the consent of the initial provider prior to accepting a reduced negotiated amount.
>
> When RMRSI was unable to collect from Martinez, it initiated litigation in its own name, asserting it was the real party in interest of the debt. *That matter is pending in Big Horn County, Wyoming's circuit court and is set for trial on June 30, 2021*. That action was filed by the Defendant in Big Horn County Circuit Court Case Number CV-2020-0102 on December 10, 2020.
>
> Upon information and belief, Martinez believes that RMRSI never paid any consideration for the alleged assignment at the time of the assignment. Instead, the real party in interest at all times remains the initial provider of services. Further, RMRSI effectively engages in the unauthorized practice of law because it sues in its own name but on behalf of the real party in interest who is the initial provider of services.

Complaint ¶¶ 9-19 (paragraph breaks omitted, emphasis added).

### *II. Legal Standard for Rule 12(b)(1) Motion*

Before filing an answer, a party may assert the defense of lack of subject-matter jurisdiction by motion. Fed. R. Civ. P. 12(b)(1). There are two types of such motions: those that are limited to the complaint's allegations, and those that go beyond those allegations. RMRSI's motion is the latter type because it asserts a fact outside of Plaintiff's

allegations – namely, that Plaintiff filed a counterclaim in the related state court action identical to her claim in this case. In this circumstance "the district court will not presume the truthfulness of the plaintiff's allegations and has wide discretion to consider other documents to resolve the jurisdictional question." *Reyes v. First Jud. Dist. Attorney's Off.,* 497 F. Supp. 3d 994, 998 (D.N.M. 2020) (citing *Contact Commc'ns v. Qwest Corp.,* 246 F. Supp. 2d 1184, 1187 (D. Wyo. 2003)). *See also CNSP, Inc. v. City of Santa Fe,* 753 F. App'x 584, 585 (10th Cir. 2018) (taking judicial notice of answer and counterclaim in related action). Here, in addition to the Complaint, the Court considers documents from the public record in the related state court action, including Plaintiff's answer and counterclaim filed in that action on December 23, 2020. ECF No. 9-2 (Def. Ex. B).

*III. Analysis*

RMRSI argues that the Court should dismiss this action under the *Colorado River* doctrine, so-named for the case that first articulated it most clearly, *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976). That doctrine is a judicially-created exception to the general rule that when the Court has subject-matter jurisdiction, it must exercise it. *Colorado River* involved a federal district court action filed by the federal government against 1,000 water rights owners. Shortly after it was filed, some of the water rights owners filed an action in state court against the federal government using the state's statutorily-created system for adjudicating water rights, and a federal statute that provided the government's consent to be named in such suits. The Supreme Court found that abstention principles did not apply, but the case was properly dismissed under other doctrines regarding "considerations of wise judicial administration, … conservation of

judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817 (internal citations and quotation marks omitted).

> Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.] … [There is a] virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

*Id.* at 817. The circumstances permitting such deferral are "considerably more limited than the circumstances appropriate for abstention" and are "exceptional." *Id.* at 818.

> In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums. … No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. *Only the clearest of justifications will warrant dismissal*.

*Id.* at 818-19 (internal citations and quotation marks omitted, emphasis added).

Other relevant factors include whether either court has first assumed jurisdiction over a res (*D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.,* 705 F.3d 1223, 1234 (10th Cir. 2013)); "the vexatious or reactive nature of either the federal or the state action; whether federal law provides the rule of decision; and the adequacy of the state court action to protect the federal plaintiff's rights." *MacIntyre v. JP Morgan Chase Bank,* 644 F. App'x 806, 807 (10th Cir. 2016) (internal numbering omitted, citing *inter alia Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 17 n. 20, 23, 28 (1983)). The "order in which jurisdiction was obtained" is not a question of solely the respective filing dates, but more broadly the relative progress of the two actions. *Cone*, 460 U.S. at 22. The Tenth

Circuit also recognizes the possibility of "impermissible forum-shopping" as a relevant factor. *Fox v. Maulding,* 16 F.3d 1079, 1082 (10th Cir. 1994); *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.,* 910 F.3d 1118, 1121–22 (10th Cir. 2018).

> [T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.

*Cone,* 460 U.S. at 16. If deferral is warranted under *Colorado River,* "the better practice is to stay the federal action pending the outcome of the state proceedings." *Fox v. Maulding,* 16 F.3d 1079, 1083 (10th Cir. 1994).

The Court must "first determine whether the state and federal proceedings are parallel. Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *CNSP,* 753 F. App'x at 585. The state action involves both RMRSI's claim to collect the underlying debt from Ms. Martinez – which is not at issue here –and Plaintiff's FDCPA claim. Plaintiff filed the very same FDCPA claim here that she had filed several months beforehand as a counterclaim in the state action. Plaintiff argues the state court probably does not have jurisdiction to award damages on her FDCPA counterclaim but cites no authority. The FDCPA expressly creates concurrent jurisdiction in the federal and state courts for this claim. 15 U.S.C. § 1692k(d) ("any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction"). The state court action, once resolved, will necessarily dispose of Plaintiff's sole claim here.

RMRSI also notes that Ms. Martinez and RMRSI are parties in the state court action, as they are here. Plaintiff responds that her husband is an additional named party in the state lawsuit, and he is not named here. She does not address the fact that Mr. Martinez would be a member of the proposed class that she seeks to represent in this case.

Plaintiff argues her purported class action in this case makes it non-parallel to the state action. But Plaintiff cites no authority in support of this contention. There is no class unless and until the Court certifies one. *See* Fed. R. Civ. P. 23(c) ("At an early practicable time after a person sues … as a class representative, the court must determine by order whether to certify the action as a class action"). This case has not yet reached a point for the Court to determine that question. In short, the differences on which Plaintiff relies are not significant, and the Court finds the two actions are parallel.

The Court must next consider whether deferral to the state court action is warranted. Some analysis of what other courts have found "exceptional" is helpful at the outset. In *Colorado River*, the foremost fact was a congressional policy (embodied in the McCarran Amendment) consenting to adjudication of the federal government's water rights in state proceedings. There is no such congressional policy involved here. The Court also found significant that the federal case was in an early stage, the extensive nature of the water rights at issue in both cases, the geographic inconvenience of the federal court, and the government's prior history of adjudicating its water rights in state proceedings instead of a federal action. 424 U.S. at 820.

In *CNSP,* the state court action involved the appellant's request for a permit to build a non-conforming cell tower in Santa Fe, New Mexico. The appellant alleged that federal

law governed the dispute, but the same issue was already long-pending in the state court action. The state court had already entered preliminary injunctive relief. In *MacIntyre,* the related state court action was a foreclosure proceeding involving not only the parties in the federal case but also, it appears, the county's public trustee. 644 F. App'x at 806. The federal case also asserted only state law claims. In *D.A. Osguthorpe* , the federal action was properly dismissed where it sought a stay or injunction against related state court action(s) that were long-running, complex and entangled. 705 F.3d at 1226.

Applying the factors here, the desirability of avoiding piecemeal litigation weighs significantly in favor of dismissal or stay. Plaintiff's entire claim in this case will necessarily be disposed of in the state court action. Plaintiff appears to recognize that it is inefficient for the parties and the Court if two separate cases proceed at the same time on the same claim. Plaintiff in fact argues that the Court should deny dismissal but stay either this case or the state court case.

The inefficiency of the two cases proceeding simultaneously is compounded because Plaintiff brought this case as a purported class action. If the state court decides Plaintiff's FDCPA claim first (if it hasn't already), Plaintiff has not explained how the judgment in that case would lack preclusive effect here. Plaintiff also does not explain how she would be able to represent a class of persons when her claim has already been adjudicated – regardless of whether she wins or loses. It seems likely that because of claim preclusion, once the state court judgment enters, Plaintiff will no longer be able to state a claim (and thus the case would be subject to dismissal) or her adjudicated claim will not be typical of the class under Rule 23, whose claims are not yet adjudicated.

The order in which jurisdiction was obtained by the concurrent fora, and their relative progress, weighs in favor of deferral to the state court action. Unless the schedule has been amended, it appears the parties' trial in Big Horn County should already be complete and (apparently, from the parties' silence), they are now awaiting a judgment or there is an appeal.

Also significant in this case is "the vexatious or reactive nature of either the federal or the state action," and the possibility that Plaintiff has engaged in impermissible forum-shopping. Plaintiff argues its motion to remove the state court action (which was denied shortly before Plaintiff filed this case) was not vexatious or reactive. RMRSI argues to the contrary that Plaintiff litigated for months in the state court before filing an improper motion to remove and filed this action to avoid the state court's denial of that motion.

Plaintiff does not in fact explain why she filed this action, despite having already brought the same claim in the state court. Plaintiff points to this being a purported class action, while the state court action is not. Plaintiff does not explain why she did not seek to represent a class in the state court. The Court will assume it is because the state courts do not have jurisdiction over a class action alleging less than $50,000 in damages per individual. Wyo. Stat. § 5-9-128; Wyo. R. Civ. Pro. for Circuit Courts 2(d); *Woodie v. Whitesell,* 2019 WY 115, ¶ 9, 451 P.3d 1152, 1156 (Wyo. 2019); *Mut. of Omaha Ins. Co. v. Blury-Losolla*, 952 P.2d 1117, 1121–22 (Wyo. 1998). The damages that Plaintiff alleges for her FDCPA claim do not appear likely to meet that minimum.

As for why she did not seek removal sooner, Plaintiff points out that even if she had, her only basis to do so was her counterclaim. Federal removal subject matter jurisdiction

must be shown instead from the complaint. Nevertheless, Plaintiff does not explain why she waited until February 15, 2021 to seek removal and waited until May 24, 2021 to file this federal action. The timing suggests that Plaintiff filed this action to avoid the effect of the state court's April 28, 2021 denial (ECF No. 9-10) of the motion for removal. As the parties have not informed the Court of whether the state court has held or continued the June 30 trial, the Court cannot yet say whether Plaintiff's filing of this action was also a vexatious attempt to delay that case. The Court finds Plaintiff's timing of this action suggests it is at least reactive and impermissible forum-shopping.

There is no res (*i.e.,* property) involved in either case, so that factor is inapplicable.

Federal law provides the rule of decision, but this does not weigh significantly for or against RMRSI's request. The FDCPA is a statutory claim. Many courts nationwide have construed the statute. Plaintiff does not point to any particularly complex issues regarding her claim. Nor does Plaintiff seem to dispute that the state court is an adequate forum to protect her rights. She filed the same claim there first.

Similarly, the relative convenience of the two courts is not very significant in this case. RMRSI recognizes this Court would be convenient if Plaintiff had not already filed and pursued her FDCPA claim in state court. RMRSI does not appear to consider the geographic separation between Big Horn County and this Court's location (Cheyenne, Wyoming) to be significantly inconvenient but rather the prospect of having to litigate the same dispute in two courts simultaneously. Nor does Plaintiff contend that this Court is geographically inconvenient for her. Despite the significant geographic distance between the two fora, this factor does not appear significant to either party.

Taking all of these facts together, the Court finds that Plaintiff's unusual approach of filing two actions on the same claim where the timing suggests an attempt to avoid or delay the state court, or to prejudice RMRSI in having to pursue two cases instead of one, is an exceptional circumstance warranting deferral to the state court action.

As noted above Plaintiff's claim should be fully disposed of in the state court, and the Court has noted serious obstacles for Plaintiff's case here after the state court action is finally resolved. However, consistent with the Tenth Circuit's preference, the Court will STAY and not dismiss this case. Specifically, the Court will administratively close the case until the parties file a notice of the state court action's resolution. Administratively closing the case removes the case from the Court' s active docket, but it does not deprive either side of the Court' s jurisdiction.

> When a court administratively closes a case, the closure generally operates as "the practical equivalent of a stay." *Quinn v. CGR,* 828 F.2d 1463, 1465 & n. 2 (10th Cir. 1987). Unlike a stay however, an administratively closed case is not counted as active although it remains on the docket. Use of the administrative-closure mechanism allows district courts to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). … Because an administratively closed case still exists on the docket of the district court, it may be reopened upon request of the parties or on the court's own motion.

*Patterson v. Santini,* 631 F. App'x 531, 534 (10th Cir. 2015) (internal quotation marks and citations omitted). *See also Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.,* 415 F.3d 1171, 1176–77 (10th Cir. 2005) (order administratively closing case was not a final, appealable order). The Court finds administrative closure is appropriate in this case until

the state court action reaches final resolution, but also requires the parties to file status reports every 90 days.

*IV. Conclusion*

For each of the above reasons, the motion is GRANTED IN PART and DENIED IN PART consistent with this order. The Clerk's office shall administratively close this case. The parties shall file a notice with the Court within **seven days** of final resolution of the state court action. The parties shall also file status reports every **90 days**.

Dated this 22nd day of July, 2021.

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE